UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SIDNEY DURELL HILL,

    Plaintiff,

v.

KEVIN LARSON,

    Defendant.
_____/

Case No. 2:20-cv-206

Hon. Hala Y. Jarbou
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Plaintiff Sidney Durell Hill's motion for summary judgment (ECF No. 18) and Defendant Corrections Officer (CO) Kevin Larson's cross-motion for summary judgment (ECF No. 24).

State prisoner Sidney Hill filed this civil rights action pursuant to 42 U.S.C. § 1983 on October 13, 2020. In his verified complaint, Hill alleges that, while confined at Chippewa Correctional Facility (URF) in Kincheloe, Michigan, CO Larson retaliated against him in violation of his First Amendment rights. (ECF No. 1, PageID.6-7.) According to Hill, CO Larson approached him one day while he was working and told him to move along. (*Id.*, PageID.6.) Hill explained that he was working, and told Larson that if he interfered, Hill would have to file a grievance against him. (*Id.*) CO Larson then said that because Hill was going to file a grievance, he would go ahead and write Hill a misconduct, and again told him to move faster.

(*Id.*) Following this interaction, Larson filed a Class III Misconduct against Hill (ECF No. 25-6, PageID.181), and Hill filed a grievance against Larson (ECF No. 25-4, PageID.170). Hill was found not guilty at the misconduct hearing. (ECF No. 1, PageID.6-7.)

Hill asserts that there are no genuine issues of material fact, and that his complaint establishes that CO Larson retaliated against him in violation of his First Amendment rights. (ECF No. 19, PageID.55-57.) As such, he argues that he is entitled to summary judgment in his favor. (*Id.*) In contrast, CO Larson argues that he is entitled to summary judgment in his favor because Hill cannot establish that Larson took an adverse action against him, nor that he acted with a retaliatory motive. (ECF No. 25, PageID.131-133.) Alternatively, Larson asserts that he is entitled to summary judgment based on qualified immunity. (*Id.*, PageID.137-140.)

There appears to be no dispute that Hill engaged in protected conduct. But, after reviewing all pleadings, depositions, affidavits, and admissions in the record, the undersigned concludes that there are genuine issues of material fact as to (1) whether Larson took an adverse action against Hill that would deter a person of ordinary firmness from engaging in protected conduct, and (2) whether that action was causally linked to Hill's protected conduct. As such, the undersigned respectfully recommends that the Court deny both motions for summary judgment.

**II. Factual Allegations**

According to Hill, on October 28, 2019, he was accompanying a prisoner with a disability from the dining hall to his unit when CO Larson told him to move faster,

and that he was loitering. (ECF No. 1, PageID.6.) Hill then attempted to explain that he was working as an aid to the disabled prisoner and could not walk faster without abandoning the other prisoner. (*Id.*) Hill further explained that if CO Larson forced him to leave the prisoner, Hill would file a grievance against Larson for denying him access to his work detail. (*Id.*) Hill says CO Larson responded by stating "well since you writing grievances I will make sure to write a ticket, now get moving dumbass." (*Id.*)

Ultimately, Hill did file a grievance against CO Larson for being forced to abandon his work detail (ECF No. 25-4, PageID.170) and CO Larson wrote Hill a misconduct for violation of posted rule #3, which prohibits loitering and requires prisoners to walk at a normal pace.[1] (ECF No. 25-6, PageID.181.) Hill attended a hearing for the misconduct ticket the next day and was found not guilty. (*Id.*, PageID.6-7.) He subsequently filed this action against CO Larson for retaliation.

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether

---

[1] The undersigned notes that, in Hill's complaint, Hill does not state exactly when before his hearing CO Larson wrote the misconduct. (ECF No. 1, PageID.6-7.) But, in his brief in support of summary judgment, Hill asserts that Larson wrote the misconduct on October 29, 2019. (ECF No.19, PageID.57.) In fact, CO Larson wrote the misconduct ticket on October 28, 2019. (ECF No. 25-6, PageID.181.) However, as discussed below, whether Larson wrote the misconduct on October 28, 2019, or October 29, 2019, is immaterial to Hill's retaliation claim.

summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV. Analysis

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The Sixth Circuit employs a burden-shifting approach:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he

would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

Thaddeus-X, 175 F.3d at 399.

### 1. Hill's Protected Conduct

According to Hill's verified complaint, his first step upon being approached by CO Larson was to explain that he was working as an aid to a disabled prisoner, and that he could not walk faster without abandoning his work detail. (ECF No. 1, PageID.6.) He then informed CO Larson that if he was ordered to quicken his pace, causing him to leave the disabled prisoner without an aid, he would file a grievance. (*Id.*) As indicated, Hill filed a grievance the next day.

The Sixth Circuit has explained that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Hill v. Lappin*, 630 F.3d 468, 472 (2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). This right extends to grievances that are, in accordance with MDOC policy, raised with staff prior to submitting a formal, written grievance. *Maben v. Thelen*, 887 F.3d 252, 265-66 (6th Cir. 2018) (explaining that it would be "unfair and illogical" to require prisoners to attempt informal resolution of a grievable issue, and then limit the recognition of protected conduct to filing formal, written grievances); MDOC PD 03.02.130(Q) (requiring a prisoner to attempt resolution of the grievable issue prior to filing a Step I grievance). "If the grievances are frivolous, however, this right is not protected." *Id.* "'Abusive or manipulative use of a grievance system [is] not ... protected conduct,' and prison officials may take action in response to the prisoner's improper use of the grievance process as long as

5

the response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014) (quoting *King v. Zamiara,* 680 F.3d 686, 699 (6th Cir. 2012)).

Nothing on the record suggests, nor does CO Larson argue, that Hill's indication that he would write a grievance was in some way abusive or frivolous. Nor is there a suggestion that Hill's subsequent grievance as to the same matter was abusive or frivolous. As such, both Hill's initial conversation with CO Larson regarding his intent to file a grievance, and the formal grievance that Hill filed constitute protected conduct.

### 2. CO Larson's Adverse Action

After interacting with Hill on October 28, 2019, CO Larson wrote Hill a Class III Misconduct for loitering in violation of URF's Posted Rules. (ECF No. 25-6, PageID.181.) Generally, an action is deemed adverse when it increases the restrictions placed on a prisoner, or decreases the privileges that prisoner enjoys. *Maben*, 887 F.3d at 266 (citing *Hill v. Lapin*, 630 F. 3d 468, 474 (6th Cir. 2004)). To determine whether a misconduct ticket constitutes an adverse action, courts look to "both the punishment [the prisoner] could have faced and the punishment he did face." *Id.* (citing *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004)).

Hill was found not guilty of the Class III Misconduct, and therefore avoided the imposition of sanctions. (ECF No. 1, PageID.6-7.) However, had he been found guilty, the hearing officer could have (1) revoked his privileges for up to 15 days, (2) assigned him to as many as 20 hours of extra duty, (3) ordered that he be confined to

his quarters for up to five days, or (4) ordered that he undergo counseling and reprimand. MDOC PD 03.03.105D. The hearing officer could have imposed any number of these sanctions but would have been required to impose at least one. *Id.* Because "the deprivation of privileges is hardly 'inconsequential,'" nor is absolute confinement to a cell, CO Larson's issuance of the Class III Misconduct is sufficiently adverse to survive a motion for summary judgment. *Maben*, 887 F.3d at 267. Whether such an action is enough to deter a reasonable person from engaging in protected conduct is an issue of material fact. *Id.*

### 3. Causal Connection

According to Hill's complaint, after he informed CO Larson that he would have to file a grievance if Larson ordered him to walk faster, CO Larson's response was to tell Hill he would write him a misconduct in exchange. (ECF No. 1, PageID.6.) Larson wrote Hill a Class III Misconduct the same day. (ECF No. 25-6, PageID.281.) Although Hill relies on both evidentiary facts to establish a causal connection between his protected conduct and Larson's adverse action against him, CO Larson asserts that Hill cannot establish retaliatory motive because he cannot rely on temporal proximity alone. (ECF No. PageID.131-133.)

While evidence of temporal proximity may not be enough on its own to survive summary judgment on a retaliation claim, the Sixth Circuit does construe such proximity as a factor in support of a causal connection. *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001). Moreover, CO Larson's statement, "well since you writing grievances I will make sure to write a ticket," is direct evidence of CO Larson's

7

retaliatory motive. *Lappin*, 630 F.3d at 476. Drawing all justifiable inferences in favor of Hill, this evidence is sufficient to survive Larson's cross-motion for summary judgment.

On the other hand, CO Larson's affidavit provides that he wrote the misconduct solely because he observed Hill loitering in the hallway, which he believed violated the posted rules. (ECF No. 26, PageID.189.) What results is a genuine issue of material fact as to whether CO Larson wrote the Class III Misconduct ticket against Hill because Hill threatened to file a grievance which, along with the aforementioned issue as to adverse conduct, precludes summary judgment in favor of Hill.

## V.     Qualified Immunity

As an alternative, CO Larson asserts that he is entitled to qualified immunity. (ECF No. 25, PageID.137-140.)   "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The

8

analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,'" *al–Kidd, supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not

9

> enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

Because there are genuine issues of material fact bearing on whether CO Larson retaliated against Hill for engaging in protected conduct, a clearly established violation of the First Amendment, CO Larson is not entitled to qualified immunity at this stage of the proceedings.

## VI. Recommendation

The undersigned respectfully recommends that this Court deny both Hill and Larson's motions for summary judgment.

If the Court accepts this recommendation, Hill's retaliation claim against CO Larson will remain.

Dated:   October 15, 2021    /s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE